1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11  GREGORIO C. FUNTANILLA, JR.,        )      1:02-cv-06001-OWW-GSA-PC
                                        )
12              Plaintiff,              )      FINDINGS AND RECOMMENDATIONS
                                        )      TO PROCEED WITH CERTAIN CLAIMS
13      vs.                             )      AND DEFENDANTS AND DISMISS ALL
                                        )      REMAINING CLAIMS AND
14  DAVID TRISTAN, et al.,              )      DEFENDANTS
                                        )
15              Defendants.             )      OBJECTIONS, IF ANY, DUE IN THIRTY
                                        )      DAYS
16  _____)

17          Plaintiff, Gregorio C. Funtanilla, Jr. ("plaintiff") is proceeding pro se in this civil action pursuant

18  to 42 U.S.C. § 1983.  Plaintiff filed this action on August 16, 2002.  (Doc. 1.)  This action now proceeds

19  on the second amended complaint filed March 10, 2003.  (Doc. 36.)

20          On October 12, 2007, this action was reassigned to the undersigned for further proceedings.

21  (Doc. 164.)  In light of this reassignment, the court has made a thorough review of the record to ascertain

22  the current status of the litigation.  This action was filed nearly six years ago.  The court acknowledges

23  delays due to the burden of its large number of pending civil cases.  However, plaintiff's practice of

24  inundating the court with motions has further burdened the court and caused additional delays.  For

25  example, plaintiff has filed twelve motions for summary judgment in this action to date.[1]

26

27          [1]Docs. 20, 46, 60, 107, 134, 141, 165, 168, 169, 171, 173, 178.

28                                               1

1   Upon review of the record, the court finds that its prior screening order did not sufficiently

2   establish the cognizable claims for relief under section 1983 found in the second amended complaint.

3   (Doc. 54.)  Therefore, in the interest of a just resolution for all parties, the court finds it necessary at this

4   juncture to revisit the second amended complaint and clarify the cognizable claims before moving

5   forward.

6   **I.       RELEVANT PROCEDURAL HISTORY**

7   Plaintiff filed this action on August 16, 2002.  (Doc. 1.)  On October 24, 2002, the court granted

8   plaintiff leave to proceed *in forma pauperis*.  (Doc. 6.)  On October 24, 2002, the court dismissed the

9   complaint and ordered plaintiff to either file an amended complaint or notify the court of his willingness

10  to proceed with the original complaint on the failure to protect claim against defendant Means; the cruel

11  and unusual punishment claim against defendants Hanse, Medrano, and Thomas; the access to courts

12  claim against defendants Gonzalez and Atkinson; the due process claim against defendants Vella,

13  Means, and Yates; and the medical care claim against defendants Medrano, Thomas, and Martinez.

14  (Doc. 9.)  On October 31, 2002, plaintiff notified the court of his willingness to proceed with the original

15  complaint pursuant to the October 24, 2002 order.  (Doc. 10.)  On December 16, 2002, the court directed

16  the United States Marshal to serve the complaint on defendants Atkinson, Gonzalez, Hanse, Martinez,

17  Means, Medrano, Thomas, Vella, and Yates.[2]  (Doc. 16.)

18  On December 31, 2002, plaintiff filed a motion for leave to amend the complaint and lodged a

19  proposed amended complaint.  (Doc. 17.)  On February 28, 2003, the court granted plaintiff's motion for

20  leave to amend, filed the first amended complaint, and ordered plaintiff to notify the court of his intent

21  to either withdraw the first amended complaint, proceed on the first amended complaint, or file a second

22  amended complaint.  (Docs. 25, 26.)  On March 10, 2003, plaintiff filed a second amended complaint,

23  and on April 18, 2003, plaintiff notified the court of his intent to proceed on the second amended

24  complaint.  (Docs. 36, 40.)

25  

26  [2]The Marshals Service executed service on defendants Atkinson, Martinez, Means, Medrano, Thomas, Vella, and

27  Yates. (Docs. 21, 23, 29, 31, 33, 41, 44.)  Service was returned unexecuted for defendants Hanse and Gonzalez (Docs. 37, 38.); however, Gonzalez was served later.  (Doc. 86.)

28  2

1    On September 24, 2003, the court screened the second amended complaint and ordered

2  defendants Atkinson, Martinez, Means, Medrano, Thomas, Vella, and Yates to file a response.  (Docs.

3  52, 54.)  On November 12, 2003, the court ordered the United States Marshal to serve the second

4  amended complaint on defendants Bloxom, Brown, Buckley, Castillo, Galaza, Godin, Gonzalez,

5  Marshall, Streeter, Tristan, Walker, and Yamamoto.[3]  (Doc. 63.)

6    On October 27, 2003, defendants Atkinson, Martinez, Means, Medrano, and Vella filed a motion

7  to dismiss, arguing that the complaint must be dismissed under the "three strikes" provision of  28

8  U.S.C. § 1915(g) because plaintiff is not entitled to proceed *in forma pauperis*.  (Doc. 58.)  On January

9  20, 2004, defendants Brown, Buckley, Castillo, Marshall, Streeter, Thomas, Tristan, Yamamoto, Yates

10  joined the motion to dismiss.  (Doc. 76.)  On April 12, 2004, defendants Bloxom, Galaza, Gonzalez, and

11  Walker joined the motion to dismiss.  (Doc. 97.)  The motion was denied on July 16, 2004.  (Doc. 100,

12  105.)

13    On October 13, 2004, defendants Atkinson, Bloxom, Brown, Buckley, Castillo, Galaza,

14  Gonzalez, Marshall, Martinez, Means, Medrano, Streeter, Thomas, Tristan, Vella, Walker, Yamamoto,

15  and Yates filed an answer to the second amended complaint.  (Doc. 109.)  On October 20, 2004, the

16  court issued a Discovery/Scheduling Order setting a discovery deadline of April 20, 2005 and a

17  dispositive motion deadline of June 20, 2005.  (Doc. 110.)

18    On February 10, 2005, defendants Bloxom, Brown, Buckley, Castillo, Galaza, Gonzalez,

19  Marshall, Martinez, Medrano, Streeter, Tristan, Vella, Walker, and Yamamoto renewed the motion to

20  dismiss under the "three strikes" provision of  28 U.S.C. § 1915(g).  (Doc. 126.)  On July 5, 2005, the

21  Magistrate issued findings and recommendations to revoke plaintiff's *in forma pauperis* status and

22  dismiss the action.  (Doc. 144.)  On August 1, 2005, plaintiff paid the $150.00 filing fee in full.  On

23  September 22, 2005, plaintiff filed objections to the findings and recommendations.  (Doc. 152.)  On

24  ///

25

26    [3]The U.S. Marshals Service executed service on defendants Bloxom, Brown, Buckley, Castillo, Galaza, Gonzalez, Marshall, Streeter, Tristan, Walker, Yamamoto (Docs. 68, 69, 70, 72, 74, 77, 79, 83, 86, 88, 90.)  Service was returned unexecuted for defendant Godin.  (Doc. 82.)  Defendant Salinas' name was inadvertently omitted from the court's service order, and she remains unserved.

27

28                                        3

1  September 28, 2005, the District Judge adopted the findings and recommendations and dismissed the

2  action in its entirety.  (Doc. 153.)  Judgment was entered on September 28, 2005.  (Doc. 154.)

3  Plaintiff filed a notice of appeal to the Ninth Circuit on October 24, 2005.  (Doc. 155.)  Due to

4  plaintiff's payment of the filing fee for this action, the appeal was granted, and the case was remanded

5  to the district court and reopened on July 5, 2007.  (Doc. 162.)

6  **II.      SCREENING REQUIREMENT**

7  The court is required to screen complaints brought by prisoners seeking relief against a

8  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court

9  must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous

10  or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief

11  from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any

12  filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time

13  if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be

14  granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

15  "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions,"

16  none of which applies to § 1983 actions.  <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 512 (2002); Fed.

17  R. Civ. Pro. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the

18  claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. Pro. 8(a).  "Such a statement must

19  simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

20  rests."  <u>Swierkiewicz</u>, 534 U.S. at 512.  A court may dismiss a complaint only if it is clear that no relief

21  could be granted under any set of facts that could be proved consistent with the allegations.  <u>Id</u>. at 514.

22  Discovery and summary judgment motions - not motions to dismiss - "define disputed facts" and

23  "dispose of unmeritorious claims."  <u>Id</u>. at 512.  "'The issue is not whether a plaintiff will ultimately

24  prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear

25  on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'"  <u>Jackson</u>

26  <u>v. Carey</u>, 353 F.3d 750, 755 (9th Cir. 2003) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)); <u>see</u>

27  <u>also</u> <u>Austin v. Terhune</u>, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the

28

4

1  opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir.

2  2001)).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations."

3  Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint

4  may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union

5  Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th

6  Cir. 1982)).

7  **III.    SUMMARY OF SECOND AMENDED COMPLAINT**

8          Plaintiff is a state prisoner presently incarcerated at Corcoran State Prison ("CSP"), in Corcoran,

9  California.  The events at issue in the second amended complaint allegedly occurred at CSP and

10  California State Prison, Sacramento County ("SAC") while plaintiff was incarcerated at those facilities.

11  Defendants are employees of the California Department of Corrections ("CDC").  Plaintiff alleges that

12  defendants violated his constitutional rights when they failed to protect him from harm, denied him

13  access to the courts, retaliated against him, failed to provide adequate exercise, failed to provide

14  adequate medical care, and violated his rights to due process.  Plaintiff names as defendants D. Atkinson

15  (Correctional Officer), J. Bloxom (Correctional Lieutenant), Fred Brown (Warden at CSP), J. Buckley

16  (Appeals Coordinator), V. Castillo (Appeals Coordinator), George Galaza (Warden at CSP), J. S. Godin

17  (Correctional Lieutenant),  J. O. Gonzalez (Correctional Officer), S. Hanse (Psychiatric Technician), J.

18  Marshall (Chief Disciplinary Officer), Maxine Martinez (Registered Nurse), D. Means (Correctional

19  Counselor), O. Medrano (Medical Technical Assistant), L. Salinas (Appeals Coordinator), B. Streeter

20  (Appeals Coordinator), C. Thomas (Medical Technical Assistant), David Tristan (Deputy Director of

21  CDC), Gelinda Vella (Correctional Counselor),  A. A. Walker (Correctional Lieutenant),V. Yamamoto

22  (Chief Disciplinary Officer), and J. Yates (Associate Warden at CSP).  Plaintiff seeks damages,

23  declaratory relief, and injunctive relief.

24          Plaintiff makes the following allegations:

25      **A.       Failure to Follow Procedure at Disciplinary Hearings**

26          On August 14, 1998, defendant Tristan signed into a law a new procedure requiring officers to

27  determine whether an inmate charged with violation of a prison rule should be assigned a staff assistant

28                                                    5

at the disciplinary hearing.  To make this determination, the hearing officer is required to ask a psychologist or psychiatrist whether (1) the inmate's behavior was a result of mental illness, (2) whether the inmate is mentally able to comprehend the nature of the charges or the disciplinary process, and (3) whether the inmate needs a staff assistant.  Failure of an officer to follow the procedure would result in reissuance of the disciplinary report and rehearing of the charges.  The policy was issued to all wardens and health care managers throughout the CDC, including CSP, but not to any state prisoners.

While at CSP, plaintiff was charged with threats to kill a peace officer, and his disciplinary hearing was held on August 17, 1998 by defendant Bloxom.  Bloxom failed to follow the new procedure, and plaintiff was not given a staff assistant.

Plaintiff was charged with delaying a peace officer's duties, and his hearing was held on August 30, 1998 by defendant Godin.  Godin failed to follow the new procedure, and plaintiff was not given a staff assistant.

Plaintiff was charged with disrespect to staff, and his hearing was held on December 20, 1998 by defendant Bloxom.  Bloxom again failed to follow the new procedure, and plaintiff was not given a staff assistant.

Plaintiff was charged with indecent exposure, and his hearing was held on December 31, 1998, by defendant Walker.  Walker failed to follow the new procedure, and plaintiff was not given a staff assistant.

As Chief Disciplinary Officers, defendants Marshall and Yamamoto had the duty to review each of plaintiff's four disciplinary proceedings to ensure compliance with due process.  They failed to order the reports reissued and the charges reheard for noncompliance with the new procedure.

On or about September 1, 1999, plaintiff was issued a rules violation report for disobeying a direct order at SAC.  At his hearing, the hearing officer properly followed the new procedure.  It was at this time that plaintiff discovered the existence of the new procedure.  Plaintiff then realized that due process violations had occurred at his four previous hearings.  Plaintiff filed an inmate appeal requesting the reports reissued and the charges reheard, but plaintiff's appeal was denied.

///

Between 2001 and 2002, plaintiff wrote over twenty letters to defendant Tristan explaining the due process violations and supplying copies of each report and Tristan's memorandum. Plaintiff requested that Tristan order defendant Galaza to reissue the reports and rehear the charges. Tristan ignored plaintiff's request.

**B.     Failure to Protect Plaintiff from Assault**

**1.     Defendant Means**

On February 24, 1998, plaintiff informed defendant Means that inmate Manago needed to be placed on plaintiff's inmate-enemy list. Plaintiff also told Means to place plaintiff's name on Manago's inmate-enemy list. Means replied, "No," laughed at plaintiff in a joking manner, then told plaintiff he would take care of it. During the next four weeks, plaintiff asked Means to place his name on Manago's enemy list, and each time Means assured plaintiff it was done. The inmate-enemy list is on CDC Form 812. Once an inmate-enemy is on an inmate's CDC Form 812, those inmates are not housed together at any facility. Means knew if he did not do what plaintiff requested, plaintiff faced a risk of being injured by Manago. On June 6, 2001, Manago attacked plaintiff at SAC. On August 6, 2001, SAC's Associate Warden Shirley Stiles informed plaintiff for the first time in writing that Means never placed plaintiff's name on Manago's inmate-enemy list. SAC finally did this on June 6, 2001. Means' failure to act caused plaintiff to be assaulted. Had Means placed plaintiff's name on Manago's list, SAC would not have released Manago to the facility where plaintiff was housed. Plaintiff's arm and head were sliced with a razor, nearly killing him.

**2.     Defendants Hanse, Medrano & Thomas**

Since October 17, 2001, defendants Hanse, Medrano and Thomas have repeatedly addressed and referred to plaintiff as a snitch and/or sex offender in the presence of other Security Housing Unit ("SHU") inmates, subjecting him to danger. After hearing the rumors, these other inmates threw rocks at plaintiff during their yard time outside when they saw plaintiff walking by with officer escorts. The officers did not punish the inmates because they could not identify them. Plaintiff suffered a 2-inch gash to his left leg from an assault.

///

7

C.    **Disposal of Plaintiff's Legal Property**

Plaintiff was transferred back to CSP on October 17, 2001.  Defendants Gonzalez and Atkinson received four boxes of legal property belonging to plaintiff and read the documents, learning that plaintiff was suing CSP staff in a pending personal injury suit at Kings County Superior Court.  On November 7, 2001, Gonzalez and Atkinson gave plaintiff some of his legal papers because the law librarian told them plaintiff had a court deadline to file documents and respond to court orders.  However, Gonzalez and Atkinson kept plaintiff's remaining legal property, including letters from C. Arisian, O. Castellon and A. Funtanilla, and the return addresses for these three persons.  Plaintiff made a request for the letters and informed Gonzalez and Atkinson that he needed the letters to contact these persons to pay $9,275 as security in the state court suit.  These three persons were willing to pay the security because they knew plaintiff had a meritorious suit against CSP staff.

Gonzalez and Atkinson ignored plaintiff, even though their sergeant ordered them to issue plaintiff the requested property.  In violation of Corcoran Operation Procedure 806 § XII which requires all excess inmate legal property to be stored at the SHU law library and made available to the inmate, defendants threw plaintiff's remaining legal and personal property in the trash on February 13, 2002.  Gonzalez and Atkinson threw away six Federal Supplement volumes, six Federal Reporter volumes, hundreds of photocopies, other legal materials, and all correspondence between Castellon, Arisian and A. Funtanilla and plaintiff, materials needed by plaintiff for his pending court cases.  Plaintiff states that Gonzalez' and Atkinson's actions chilled his First Amendment right to petition the government for redress.

On October 9, 2001, the Kings County Superior Court ordered plaintiff to pay $9,275 as security within thirty days of the date of service.  Plaintiff did not pay the security because defendants obstructed his access to the persons who would have paid the security.  As a result, the case was dismissed on December 17, 2001.

Plaintiff's lawsuit in Superior Court was based on a clear incident where Corcoran officers were escorting plaintiff when he tripped and fell, injuring his head, shoulder and back, and fracturing on

///

8

vertebra.  The defendants in the state suit were negligent and if plaintiff had been able to pay the security, the case would have proceeded to judgment in plaintiff's favor.

### D.    Refusal to Process Plaintiff's Appeals

Plaintiff had planned to file an amended complaint in this action since filing the original complaint on October 16, 2002.   However, defendants' blanket ban on processing plaintiff's appeals chilled his First Amendment right to petition the government for redress.

### E.    Confinement in the SHU

Beginning on September 13, 2001, defendants Vella, Means and Yates retained plaintiff in the SHU for twelve months on an indeterminate SHU term and during that time refused to consider releasing him from the SHU.  In 2002, defendant Means told plaintiff that if he continued to litigate against prison staff he would not be considered for release from the SHU.  Defendant Vella told plaintiff in 2002 she hated plaintiff because he filed so many inmate appeals and she would not consider him for release from the SHU.  Defendant Yates agreed with the basis for retention.  California Code of Regulations 15 § 3341.5(c)(2)(A)(1) requires these defendants to consider plaintiff for release from the SHU at least every 180 days.  Plaintiff was confined to his cell 24 hours a day, nearly every day, with constant lighting in his cell, excessive noise from mentally ill inmates, and no access to personal hygiene items, telephone, or religion.

### F.    Inadequate Responses to Plaintiff's Appeals

Since arriving at CSP on October 17, 2001, plaintiff has filed at leased fifteen administrative appeals at the prison.  Defendants Streeter, Castillo, Buckley, and Salinas receive the appeals and return them to plaintiff with a response.  Plaintiff's appeal number 01-3402 was granted in part and plaintiff was supposed to receive his stored legal and personal property.

On May 23, 2002, plaintiff wrote a letter to defendant Buckley asking him to issue an order effecting the appeal decision, and Buckley responded that the order was being fulfilled.

On June 23, 2002, plaintiff requested return of his appeal and order, and defendant Castillo responded that the order was contained in the second level appeal response.

///

1   On July 11, 2002, when plaintiff asked defendant Streeter to return the appeal that was remanded

2   on July 9, Streeter said their office did not have it.

3   All of the defendants' responses were false.  Defendants never returned the appeals or plaintiff's

4   property.  Defendants' delay kept plaintiff from seeking the Director's level appeal and proceeding to

5   court.  Defendants rejected other appeals and refused to provide written responses and enforce favorable

6   decisions.

7   Mid-year, law library officer Lopez told plaintiff at least twice he wished Buckley would stop

8   calling him regarding plaintiff's "property appeal issues."  Buckley was trying to get Lopez involved and

9   circumvent the appeal issue.  Officer Lopez and plaintiff discussed the property issue several times

10  during weekly visits to the law library.  Defendant Buckley wrote plaintiff an intimidating letter on June

11  4, 2002.

12  Defendants knew plaintiff's appeal number 02-01660 was partially granted on July 2, 2002, but

13  they refused to enforce it.  On December 12, 2002, Superior Court Judge Lynn C. Atkinson ordered

14  CSP's prison warden to show cause why that court should not order the prison to enforce the appeal

15  decision.

16  Defendant Salinas interviewed plaintiff on August 15, 2002, regarding medical appeal number

17  02-01294.  At that time, plaintiff noticed a memorandum dated February 2002, attached to his appeal

18  in Salinas' hands.  The memorandum was a reminder to defendants to discard "any appeals" from

19  plaintiff that could reasonably be destined for court.  A couple of weeks later when plaintiff received the

20  appeal back, it had a response from the first level, but the memorandum was no longer attached.  On

21  September 12, 2002, plaintiff re-submitted the appeal to defendants for response at the second level, and

22  he did not receive any response.  Salinas admitted to plaintiff on August 15, 2002, that the appeals

23  process is inadequate, and Salinas said that some of plaintiff's appeals were discarded.

24  Since August 2002, plaintiff has submitted six appeals, and defendants have refused to respond

25  to any of them.  Plaintiff keeps extensive records of the dates and responses to his appeals.

26  Plaintiff possesses documents showing that defendant Castillo knew that inmates are required

27  to exhaust administrative appeals before filing court actions.

28

10

1   All appeals described above were prepared and submitted for purposes of exhausting

2   administrative remedies of claims destined for court.  Defendants' actions are in retaliation for plaintiff's

3   use of the inmate appeal process and have caused him injuries.

4   **G.    Inadequate Exercise Schedule**

5   Since October 17, 2001, defendants Vella, Brown, and Galaza have failed to provide plaintiff

6   with a schedule for out-of-cell exercise meeting the minimum standard of five hours per week.  Lack of

7   exercise has caused plaintiff psychological distress and physical pain to his back, neck, and legs.

8   Plaintiff was accustomed to 8-10 hours each day of out-of-cell exercise yard time in the general

9   population.

10  Plaintiff has arthritis pain in his back that is not improving, because he is unable to follow the

11  doctors' recommended daily exercise program in his cell.  Plaintiff's cell does not have enough space.

12  Plaintiff does the exercises when he is outside in the yard, but the yard schedule is not enough.  The

13  psychiatrist recently increased plaintiff's medications to help him endure the lack of outdoor yard time.

14  **H.    Delay in Refill of Prescriptions**

15  Since October 17, 2001, defendants Medrano, Thomas and Martinez knew plaintiff needed to

16  be examined by a medical doctor to refill his seizure medication, pain relief medication, and psychiatric

17  medication.  Plaintiff made requests, which the defendants ignored.  On January 9, 2002, after plaintiff

18  filed an inmate appeal, he was finally seen by a doctor who refilled the medication.  The delay in

19  treatment caused plaintiff to suffer daily pain for over two months.  These defendants knew or should

20  have known their failures to act were causing plaintiff daily pain and frequent seizures.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

11

1    **IV.    PLAINTIFF'S CLAIMS**

2         **A.    Legal Standard**

3         The Civil Rights Act under which this action was filed provides:

4              Every person who, under color of [state law] . . . subjects, or causes to be
               subjected, any citizen of the United States . . . to the deprivation of any
5              rights, privileges, or immunities secured by the Constitution . . . shall be
               liable to the party injured in an action at law, suit in equity, or other
6              proper proceeding for redress.

7    42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution

8    and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations

9    omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created

10   interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."

11   Id.

12        "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions,"

13   none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512

14   (2002); Fed. R. Civ. P. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a short and plain

15   statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such

16   a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds

17   upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear

18   that no relief could be granted under any set of facts that could be proved consistent with the allegations.

19   Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is

20   entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that

21   a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th

22   Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d

23   1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the

24   claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))).  However, "the liberal

25   pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319,

26   330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements

27   ///

28                                              12

1  of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th

2  Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

3      **B.**    **First Cause of Action – Due Process – (Defendants Tristan, Bloxim, Godin, Walker,**
   **and Galaza)[4]**

4  

5         Plaintiff alleges that he was denied due process at four disciplinary hearings when defendants

6  failed to follow a new CDC procedure requiring them to determine whether plaintiff should be assigned

   a staff assistant at the hearing.

7         The Due Process Clause protects against the deprivation of liberty without due process of law.

8  Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005).  In order to invoke the protection

9  of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the

10 protection is sought.  Id.  Liberty interests may arise from the Due Process Clause itself or from state

11 law.  Id.  The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more

12 adverse conditions of confinement."  Id.  Under state law, the existence of a liberty interest created by

13 prison regulations is determined by focusing on the nature of the deprivation.  Sandin v. Conner, 515

14 U.S. 472, 481-84, 115 S.Ct. 2293 (1995).  Liberty interests created by state law are "generally limited

15 to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation

16 to the ordinary incidents of prison life."  Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir.

17 2007).  In light of the Supreme Court's decision in Wilkinson, the court presumes the existence of a

18 liberty interest in avoiding long term confinement in the SHU.  Wilkinson, 545 U.S. at 223-24.

19        "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of

20 rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556

21 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must

22 be met are:  (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives

23 written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written

24 statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4)

25 

26 

27     [4]The court addresses the ten causes of action enumerated by plaintiff on pages 16-17 of the second amended complaint.

28           13

1   the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be

2   unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner

3   where the prisoner is illiterate or the issues presented are legally complex.  Id. at 563-71.  As long as the

4   five minimum Wolff requirements are met, due process has been satisfied.  Walker v. Sumner, 14 F.3d

5   1415, 1420 (9th Cir. 1994).

6          The provision for certain procedural protections under state law does not work to enlarge the

7   protections plaintiff is due under federal law, which are discussed above.  Sandin v. Conner, 515 U.S.

8   472, 481-84 (1995).  Thus, allegations concerning the failure of staff to follow certain state regulations

9   concerning procedure do not give rise to a claim for relief unless plaintiff has a protected liberty interest

10  at stake and plaintiff is deprived of the procedural protections he is also due under federal law.

11         Plaintiff does not allege facts which support a finding that he was deprived of any of the

12  minimum procedural protections he is due under federal law.  Wolff, 418 U.S. at 563-71.  Plaintiff

13  alleges that defendants failed to follow state law requiring them to ask a psychologist or psychiatrist (1)

14  to evaluate whether plaintiff's behavior was a result of mental illness, (2) whether plaintiff was mentally

15  able to comprehend the nature of the charges or the disciplinary process, and (3) whether plaintiff needed

16  a staff assistant at his disciplinary hearings.  Federal due process requires legal assistance to be provided

17  for a prisoner at a disciplinary hearing if the prisoner is illiterate or the issues presented are legally

18  complex.  Plaintiff does not allege that defendants failed to provide him with legal assistance required

19  because he is illiterate of the issues were legally complex.  Nor does plaintiff allege any other facts

20  demonstrating that defendants failed to meet any of the other Wolff requirements.  Therefore, the court

21  finds that plaintiff fails to state a due process claim under section 1983 against defendants for their

22  failure to follow state law procedures at the disciplinary hearings.

23         **C.    Second Cause of Action – Failure to Protect – (Defendant Means)**

24         Plaintiff alleges that defendant Means failed to protect him from an assault by another inmate

25  known to be plaintiff's enemy.

26         To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

27  conditions must involve "the wanton and unnecessary infliction of pain . . . ."  Rhodes v. Chapman, 452

28                                                        14

U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Id.; Toussaint, 801 F.2d at 1107; Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  Id. at 1250; Farmer v. Brennan, 511 U.S. 825, 833 (1994); see also Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir.1989) (deliberately spreading rumor that prisoner is snitch may violate right to be protected from violence while in state custody).

To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to a substantial risk of serious harm to the inmates's safety.  Farmer, 511 U.S. at 834.  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ."  Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837.

The court finds that plaintiff states a cognizable claim for failure to protect under the Eighth Amendment against defendant Means.

**D.     Third Cause of Action – Denial of Access to Courts – (Defendants Gonzalez & Atkinson)**

Plaintiff alleges that defendants Gonzalez and Atkinson denied him access to legal property he needed to litigate a lawsuit in state court, causing the lawsuit to be dismissed.

Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177 (1996).  Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim).  Christopher v. Harbury, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002).  For backward-looking claims such as that at issue here, plaintiff "must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit."  Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007).

1    "[T]he injury requirement is not satisfied by just any type of frustrated legal claim." Lewis, 518

2    U.S. at 354, 116 S.Ct. at 2181.  Inmates do not enjoy a constitutionally protected right "to transform

3    themselves into litigating engines capable of filing everything from shareholder derivative actions to

4    slip-and-fall claims." Id. at 355, 2182.  Rather, the type of legal claim protected is limited to direct

5    criminal appeals, habeas petitions, and civil rights actions such as those brought under section 1983 to

6    vindicate basic constitutional rights.     Id. at 354, 2181-82 (quotations and citations omitted).

7    "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional)

8    consequences of conviction and incarceration." Id. at 355, 2182 (emphasis in original).

9        Plaintiff alleges that defendants' actions caused his state court lawsuit to be dismissed.  However,

10   plaintiff's lawsuit was a personal injury slip-and-fall lawsuit, and not a direct criminal appeal,  habeas

11   petition, or civil rights action.  Therefore, the court finds that plaintiff fails to state a cognizable claim

12   under section 1983 for denial of access to the courts against defendants Gonzalez and Atkinson.

13       **E.        Fourth Cause of Action – Retaliation – (Defendants Gonzalez & Atkinson)**

14       Plaintiff alleges that defendants Gonzalez and Atkinson threw away his legal materials in

15   retaliation against plaintiff for filing a personal injury lawsuit against Corcoran prison staff.

16       Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the

17   government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985);

18   see also Valandingham, 866 F.2d 1135; Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within

19   the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An

20   assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's

21   protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights,

22   and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408

23   F.3d 559, 567-68 (9th Cir. 2005).  However, a prisoner's exercise of his First Amendment rights can be

24   chilled even when not completely silenced. Id. at 568-69. Rather, the proper inquiry is whether an

25   official's acts would chill or silence a person of ordinary firmness from future First Amendment

26   activities. Id. (*citing* Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th

27   Cir.1999)).  An allegation of retaliation against a prisoner's First Amendment right to file a prison

28                                                    16

1  grievance is sufficient to support claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir.

2  2003).

3       Plaintiff alleges that "Gonzalez' and Atkinson's actions chilled [his] First Amendment right to

4  petition the government for redress."  Therefore, the court finds that plaintiff states a claim under section

5  1983 against defendants Gonzalez and Atkinson for retaliation.

6       **F.**     **Fifth Cause of Action – Due Process – (Defendants Vella, Means & Yates)**

7       Plaintiff alleges that his rights to due process were violated when defendants Vella, Means and

8  Yates retained him in the SHU for twelve months on an indeterminate term without considering plaintiff

9  for release from the SHU every 180 days.  Plaintiff alleges that he was confined to his cell 24 hours a

10 day, nearly every day, with constant lighting in the cell, excessive noise from mentally ill inmates, and

11 no access to personal hygiene, telephone, or religion.

12      In light of the Supreme Court's decision in Wilkinson, the court presumes the existence of a

13 liberty interest in avoiding long term confinement in the SHU.  Wilkinson v. Austin, 545 U.S. 209, 223-

14 24 (2005).  With respect to retention in Ad-Seg [or SHU], "[p]rison officials must engage in some sort

15 of periodic review of the confinement of such inmates."  Toussaint v. McCarthy, 801 F.2d 1080, 1100-

16 01 (9th Cir. 1986).  Annual reviews do not sufficiently protect the prisoner's liberty interest.  Id.

17 Therefore, the court finds that plaintiff  states a cognizable claim under section 1983 for violation of his

18 due process rights against defendants Vella, Means and Yates.

19      **G.**     **Sixth Cause of Action – Retaliation – (Defendants Vella, Means & Yates)**

20      Plaintiff alleges that defendants Vella, Means and Yates refused to consider his release from a

21 SHU term beginning on September 13, 2001 out of retaliation against him for filing inmate appeals.

22      As stated above, an allegation of retaliation against a prisoner's First Amendment right to file

23 a prison grievance is sufficient to support claim under section 1983.  Bruce, 351 F.3d at 1288.

24 However, the claim is not viable unless the five basic elements are present:  (1) An assertion that a state

25 actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct,

26 and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action

27 did not reasonably advance a legitimate correctional goal."  Rhodes, 408 F.3d at 567-68.  However, a

28

1   prisoner's exercise of his First Amendment rights can be chilled even when not completely silenced. Id.

2   at 568-69. Rather, the proper inquiry is whether an official's acts would chill or silence a person of

3   ordinary firmness from future First Amendment activities. Id. (*citing* Mendocino Environmental Center

4   v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir.1999)).

5        The court finds that plaintiff states a cognizable claim under section 1983 against defendants

6   Vella, Means, and Yates for retaliation.

7

8        **H.**    **Seventh Cause of Action – Failure to Protect – (Defendants Hanse, Medrano & Thomas)**

9        Plaintiff alleges that defendants Hanse, Medrano, and Thomas repeatedly addressed and referred

10   to him as a snitch and/or sex offender in front of other inmates, causing him to be assaulted.

11        As stated above, deliberately spreading a rumor that a prisoner is snitch may violate the

12   prisoner's right to be protected from violence while in state custody. See Valandingham, 866 F.2d at

13   1138.  To establish a violation of this duty, the prisoner must establish that prison officials were

14   deliberately indifferent to a substantial risk of serious harm to the inmates's safety.  Farmer, 511 U.S.

15   at 834.  The deliberate indifference standard involves an objective and a subjective prong.  First, the

16   alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Id. (citing Wilson, 501 U.S.

17   at 298).  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health

18   or safety."  Farmer, 511 U.S. at 837.

19        The court finds that plaintiff states a cognizable claim for failure to protect under the Eighth

20   Amendment against defendants Hanse, Medrano, and Thomas.

21

22        **I.**    **Eighth Cause of Action – Medical Care – (Defendants Medrano, Thomas & Martinez)**

23        Plaintiff alleges that defendants Medrano, Thomas, and Martinez violated his rights to adequate

24   medical care  when they delayed the refill of his prescriptions from October 17, 2001 until January 9,

25   2002, causing him to suffer frequent seizures and daily pain for over two months.

26        To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

27   conditions must involve "the wanton and unnecessary infliction of pain."  Rhodes, 452 U.S. at 347.  A

28                                              18

prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 834.

Deliberate indifference can be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Estelle v. Gamble, 429 U.S. at 104-05.  However, where a prisoner alleges a delay in receiving medical treatment, the prisoner must allege that the delay led to further injury.  McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, WMX Techs, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997); Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  The needless suffering of pain may be sufficient to demonstrate further harm.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

The court finds that plaintiff has stated a cognizable claim for violation of his rights to adequate medical care under the Eighth Amendment against defendants Medrano, Thomas, and Martinez.

**J.**     **Ninth Cause of Action – Unsafe Conditions of Confinement – (Defendants Vella, Brown & Galaza**

Plaintiff alleges that defendants Vella, Brown, and Galaza violated his right to an adequate exercise program, causing plaintiff to suffer psychological and physical pain.

"'[S]ome form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates.'" Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1995) (quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)).  Thus, "[the] deprivation of outdoor exercise [can] constitute cruel and unusual punishment." Allen, 48 F.3d at 1087.  The temporary denial of outdoor exercise with no medical effects is not a substantial deprivation, May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997), and the fact that plaintiff was accustomed to enjoying 8-10 hours each day of out-of-cell exercise yard time in the general population does not cause his present deprivation to be extreme.

1    However, plaintiff alleges in the second amended complaint that within a year he was only given three

2    hours outdoor yard exercise time during forty-two days.  (Sec Amd Cmp at 10 ¶ 38.)  Plaintiff also

3    complains of increased arthritis pain and emotional distress from lack of exercise, and he claims his cell

4    is too small for the exercises recommended by his doctor.  In this Circuit, such deprivation of regular

5    outdoor exercise is unquestionably sufficient to meet the objective requirement of the Eighth

6    Amendment analysis.  Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (denial of all outdoor

7    exercise for six weeks meets objective Eighth Amendment requirement); Allen, 48 F.3d at 1086-88

8    (forty-five minutes of outdoor exercise per week for six weeks meets objective Eighth Amendment

9    requirement).   Therefore, the court finds that plaintiff states a cognizable claim under section 1983

10   against defendants Vella, Brown, and Galaza for depriving him of adequate exercise.

11           **K.       Tenth Cause of Action – Retaliation – (Streeter, Castillo, Buckley & Salinas)**

12           Plaintiff alleges that defendants Streeter, Castillo, Buckley, and Salinas retaliated against him

13   for filing prison appeals when they interfered with his ability to exhaust administrative remedies at the

14   prison before filing court actions.

15           As stated above, a claim for retaliation is not viable unless the five basic elements are present:

16   (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that

17   prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

18   Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

19   Rhodes, 408 F.3d at 567-68.  However, a prisoner's exercise of his First Amendment rights can be

20   chilled even when not completely silenced. Id. at 568-69. Rather, the proper inquiry is whether an

21   official's acts would chill or silence a person of ordinary firmness from future First Amendment

22   activities. Id. (*citing* Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th

23   Cir.1999)).

24           Based on plaintiff's allegations, the court finds that plaintiff states a cognizable claim for

25   retaliation against defendants Streeter, Castillo, Buckley, and Salinas.

26   ///

27   ///

28                                                          20

1    **L.    Inadequate Responses to Plaintiff's Appeals**

2    Plaintiff alleges that defendants imposed a blanket ban on processing his appeals, which

3    interfered with his plan to file an amended complaint in this action and "chilled [his] First Amendment

4    right to petition the government for redress."

5    First, plaintiff fails to allege any facts linking any individual defendant's act or omission to act

6    to his deprivation.  Section 1983 plainly requires that there be an actual connection or link between the

7    actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell, 436

8    U.S. 658; see also Rizzo, 423 U.S. 362.  "A person deprives another of a constitutional right, where that

9    person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act

10   which [that person] is legally required to do that causes the deprivation of which complaint is made.'"

11   Hydrick, 500 F.3d at 988 (quoting Johnson, 588 F.2d at 743).  "[T]he 'requisite causal connection can

12   be established not only by some kind of direct, personal participation in the deprivation, but also by

13   setting in motion a series of acts by others which the actor knows or reasonably should know would

14   cause others to inflict the constitutional injury.'"  Id. (quoting Johnson at 743-44).

15   Second, a defendant's actions in reviewing a prisoner's administrative appeal cannot serve as the

16   basis for liability under a § 1983 action.  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) .

17   "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon

18   the inmates."  Id. (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v.

19   Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no

20   entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)

21   (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639,

22   640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural

23   protections envisioned by the Fourteenth Amendment."  Azeez, 568 F. Supp. at 10; Spencer v. Moore,

24   638 F. Supp. 315, 316 (E.D. Mo. 1986).

25   Third, plaintiff fails to allege facts demonstrating that his First Amendment rights were "chilled."

26   Plaintiff alleges that defendants' actions interfered with his plan to file an amended complaint in this

27   action, but he proceeded to file two amended complaints in this action.

28

1      Therefore, the court finds that plaintiff fails to state a claim under section 1983 for defendants'

2  refusal to process his appeals.

3  **V.      CONCLUSION**

4      Based on the foregoing analysis, the court finds that plaintiff's second amended complaint states

5  cognizable claims for relief under section 1983 against (1) defendants Hanse, Means, Medrano, and

6  Thomas for failure to protect him, in violation of the Eighth Amendment; (2) against defendants

7  Atkinson, Buckley, Castillo, Gonzalez, Means, Salinas, Streeter, Vella, and Yates for retaliation, in

8  violation of the First Amendment, (3) against defendants Means, Vella, and Yates for violation of Due

9  Process, (4) against defendants Martinez, Medrano, and Thomas for failure to provide adequate medical

10 care, in violation of the Eighth Amendment; and (5) against defendants Brown, Galaza, and Vella for

11 adverse conditions of confinement, in violation of the Eighth Amendment.  However, the court finds that

12 plaintiff's allegations do not give rise to any other claims for relief under section 1983.  Therefore, IT

13 IS HEREBY RECOMMENDED that:

14      1.      This action proceed against:

15              (1)      defendants Hanse, Means, Medrano, and Thomas for failure to protect plaintiff,

16                       in violation of the Eighth Amendment;

17              (2)      defendants Atkinson, Buckley, Castillo, Gonzalez, Means, Salinas, Streeter,

18                       Vella, and Yates for retaliation, in violation of the First Amendment;

19              (3)      defendants Means, Vella, and Yates for violation of Due Process;

20              (4)      defendants Martinez, Medrano, and Thomas for failure to provide adequate

21                       medical care, in violation of the Eighth Amendment; and

22              (5)      defendants Brown, Galaza, and Vella for adverse conditions of confinement, in

23                       violation of the Eighth Amendment; and

24      2.      All other defendants and claims be dismissed from this action for failure to state a claim

25              upon which relief may be granted under section 1983; and

26 ///

27

28                                                      22

3.     The Clerk's Office be directed to reflect the dismissal of defendants Bloxom, Godin, Marshall, Tristan, Walker, and Yamamoto on the docket.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:    **June 23, 2008**          _____ **/s/ Gary S. Austin** _____
                                       UNITED STATES MAGISTRATE JUDGE